```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____

HOLDBROOK PEDIATRIC DENTAL, LLC,

               Plaintiff,          Civil No. 14-6115 (NLH/JS)
v.
                                           OPINION
PRO COMPUTER SERVICE, LLC,

               Defendant.

_____
```

**APPEARANCES:**

Robert H. Montgomery, Esquire
Law Offices of Robert H. Montgomery
230 South Broad Street
Suite 1302
Philadelphia, Pennsylvania 19107

    *Counsel for Plaintiff*

Douglas M. Long, Esquire
Long Marmero & Associates LLP
44 Euclid Street
Woodbury, New Jersey 08096

    *Counsel for Defendant*

**HILLMAN, District Judge:**

    This matter comes before the Court by way of motion of Defendant, Pro Computer Service, LLC (hereafter, "PCS"), seeking dismissal of this action based on a mandatory arbitration clause purportedly contained in an agreement between the parties.  PCS alternatively seeks a stay of the litigation and to compel arbitration, which is currently pending before the American Arbitration Association (hereafter, "AAA").  Plaintiff,

1

Holdbrook Pediatric Dental, LLC (hereafter, "Holdbrook"), opposes the motion.  The Court has considered the submissions of the parties and decides this matter pursuant to Fed. R. Civ. P. 78.

For the reasons that follow, PCS' motion will be denied without prejudice.

I.      BACKGROUND

Holdbrook operates two pediatric dental practices in New Jersey.  On April 1, 2014, Holdbrook entered into an agreement with PCS whereby PCS would provide information technology services to Holdbrook in exchange for a monthly fee.  The agreement at issue, a "Managed Support Plan," is attached to the complaint.

Holdbrook alleges that on July 24, 2014, one of its representatives informed PCS by telephone that Holdbrook was dissatisfied with the services that PCS provided.  Within approximately fifteen minutes of that conversation, PCS allegedly remotely accessed Holdbrook's computers, created network passwords, and failed to provide the passwords to Holdbrook.  As a result, Holdbrook was locked out of its server.  Although Holdbrook demanded that access to the network be restored, PCS purportedly refused to do so until the following day.  Holdbrook contends that as a result, it was unable to access its electronic business records, including patient files,

and was forced to cancel eighty-three previously scheduled appointments for July 24, 2014 and July 25, 2014.

Holdbrook brings this action pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A)(i), based upon PCS' alleged knowing transmission of a program, information, code or command that intentionally caused damage without authorization to a protected computer.  Holdbrook also asserts state law claims for breach of contract, tortious interference with business relationships, and negligence.

Despite Holdbrook's filing of this civil action on October 2, 2014, five days later PCS filed a demand for arbitration with the AAA.  PCS' position in the arbitration and in the motion to dismiss presently before the Court is that the Managed Support Plan agreed to by Holdbrook contains a mandatory arbitration clause.

The Managed Support Plan does not, in itself, contain an arbitration provision.  Rather, the provision is contained in a separate "Terms and Conditions" document that, according to PCS, was integrated into the contract.  (Br. in Supp. of Mot. to Dismiss or, in the Alternative, to Compel Arbitration and Stay Litigation Pending Arbitration (hereafter, "PCS' Br.") 3-4.) The Managed Support Plan had been sent in electronic form to Holdbrook, and the "Terms and Conditions" document was attached

as a hyperlink[1] to the last page of the contract, directly above the line where a Holdbrook representative could sign to indicate acceptance of the agreement.  (Id. at 4.)  Holdbrook argues that it did not agree to the separate "Terms and Conditions" and is not bound by the arbitration clause contained therein.  (Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss or, in the Alternative, to Compel Arbitration and Stay Litigation Pending Arbitration (hereafter, "Holdbrook's Opp. Br.") 4-8.)

**II.  JURISDICTION**

As Holdbrook asserts a claim under federal law, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The Court may exercise supplemental jurisdiction over Holdbrook's state law claims pursuant to 28 U.S.C. § 1367.

**III. DISCUSSION**

**A. Standard for Dismissal**

PCS moves to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1) or, alternatively, to stay the matter and compel arbitration.  "Rule 12(b)(1), however, is not the correct rule of law under which to assert a contract-based defense requiring arbitration."  Masoner v. Educ. Mgmt. Corp., 18 F. Supp. 3d 652, 656 (W.D. Pa. 2014).  As explained by the Third Circuit, motions

---

[1] "A hyperlink electronically provides direct access from one internet location/file to another, typically by clicking a highlighted word or icon." Major v. McCallister, 302 S.W.3d 227, 228 n.1 (Mo. Ct. App. 2009).

4

to dismiss on the basis that arbitration is required "are not jurisdictional as they raise a defense to the merits of an action." Liberty Mut. Fire Ins. Co. v. Yoder, 112 F. App'x 826, 828 (3d Cir. 2004). "Rather, such dismissals are 'generally effected under Rule 12(b)(6) . . . or Rule 56.'" Id. (internal citation omitted); see also Nationwide Ins. Co. of Columbus, Ohio v. Patterson, 953 F.2d 44, 45 n.1 (3d Cir. 1991).

Although courts have been inconsistent on the standard to be applied, the Third Circuit recently provided guidance on the issue. In Guidotti v. Legal Helpers Debt Resolution, 716 F.3d 764, 771 (3d Cir. 2013), the Third Circuit held that "'[w]here the affirmative defense of arbitrability of claims is apparent on the face or a complaint (or . . . documents relied upon in the complaint),' 'the [Federal Arbitration Act] would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery[.]'" Id. at 773-74 (internal citations omitted).[2] However, when arbitrability is not apparent on the face of the complaint, then further development of the factual record is necessary and the motion should be decided under the summary judgment standard.

---

[2] The Third Circuit noted that the issue of whether an agreement to arbitrate was actually reached is usually brought in the context of motions to compel arbitration. Guidotti, 716 F.3d at 771. Here, PCS seeks dismissal of the action, but the Court nonetheless finds the standard in Guidotti applicable in deciding PCS' motion.

5

Id. at 774.  Moreover, if the complaint and incorporated documents facially establish arbitrability but the non-moving party comes forward with enough evidence to question the parties' intentions concerning arbitration, the motion to compel arbitration should be decided under the summary judgment standard.  Id.

Under either of these latter two scenarios, "a 'restricted inquiry into factual issues' will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate."  Id. (internal citation omitted).  The non-moving party "'must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity' of the arbitration agreement[.]"  Id. (internal citation omitted).  After limited discovery, the party seeking to compel arbitration may file a renewed motion, which would be decided under the summary judgment standard.  Id. at 776.  If the Court concludes that summary judgment is not warranted, then it may proceed summarily to a trial on the issue of whether the parties reached an agreement to arbitrate.  Id.

**B. Application to This Case**

In this case, there is no dispute that Holdbrook signed the Managed Support Plan, nor is there any dispute that the "Terms

and Conditions" contain a mandatory arbitration clause.[3]  The dispute centers on whether the "Terms and Conditions," which were purportedly contained in a hyperlink, were incorporated into the Managed Support Plan and were thereby accepted by Holdbrook when its authorized agent signed the Managed Support Plan.

The Court has reviewed the Managed Support Plan attached to the complaint.  On the last page of the contract, in small font directly above the signature line, is the following text: "<a href="http://www.helpmepcs.com/site_media/terms.conditions.pdf">Download Terms And Conditions </a>"  According to PCS, when the Managed Support Plan is printed on paper, the coding for the hyperlink appears as above rather than as a hyperlink.  (Reply Br. in Supp. of Mot. to Dismiss or, in the Alternative, to Compel Arbitration and Stay Litigation Pending Arbitration (hereafter, "PCS' Reply Br.") 3.)  PCS maintains, however, that when the Managed Support Plan was sent to Holdbrook, it was sent in an electronic format with a clickable hyperlink to the "Terms

---

[3] Paragraph 12 of the "Terms and Conditions" states, in relevant part, as follows: "<u>Mandatory Arbitration</u>: Any controversy or claim arising out of this Managed Services Agreement, or relating to it, including any statutory claims, will be settled by arbitration administered by the American Arbitration Association. . . . PCS and CLIENT are choosing arbitration instead of litigation to resolve its disputes and VOLUNTARILY AND KNOWINGLY WAIVE A RIGHT TO A JURY TRIAL."  (PCS' Br., Ex. C.)

and Conditions" directly above the signature line. (Id. at 2-3.)  According to PCS, when Holdbrook's authorized agent signed the Managed Support Plan, it should be assumed that she read the entire agreement -- including the "Terms and Conditions" contained in the hyperlink -- and assented to such terms. (Id. at 2.)

Holdbrook argues that the "Terms and Conditions" were not incorporated into the contract for two reasons.  First, Holdbrook contends that the "Terms and Conditions" contain a separate signature block to demonstrate acceptance of such additional terms by both parties.  (Holdbrook's Opp. Br. 6.) Neither Holdbrook nor PCS separately signed the "Terms and Conditions," and Holdbrook thus asserts there was thus no assent to these additional terms.  (Id.)  Second, Holdbrook argues that it was never made aware that the "Terms and Conditions" were to be incorporated into the agreement.  Holdbrook points to the fact that the agreement was signed as a hard copy rather than in electronic format, and the hard copy contained only the coding for the "Terms and Conditions" hyperlink.  Holdbrook asserts that it was not abundantly clear that there was a hyperlink which contained additional terms of the contract.  (Id. at 8.) Additionally, Holdbrook contends that the Managed Support Plan does not contain any language incorporating the "Terms and Conditions" by reference, so as to have placed Holdbrook on

8

notice that there were additional terms beyond those set forth in the contract itself.  (Id.)

In making the threshold inquiry into whether Holdbrook accepted the "Terms and Conditions" as part of the Managed Support Plan, the Court applies state law on the issue of contract formation.  See Davis v. Dell, Inc., No. Civ. A. 07-630, 2007 WL 4623030, at *4 (D.N.J. Dec. 28, 2007), aff'd, 2008 WL 3843837, at *1 (D.N.J. Aug. 15, 2008).  In deciding which state's law to apply, the Court notes that both parties are New Jersey entities with principal places of business in New Jersey, the contract was apparently prepared by a representative of PCS in New Jersey,[4] and the contract was addressed to Holdbrook at a New Jersey address.  Both parties cite New Jersey law in their briefs, and neither party argues that another state would also have an interest in this matter.  As the Court cannot identify any state other than New Jersey with an interest in this dispute, the Court will apply New Jersey law on the issue of contract formation in deciding the present motion.

The Court begins by consideration of long-standing principles of contract formation.  Under New Jersey law, a

---

[4] The agreement states that it was prepared by Dan Sommese, and Sommese's phone number is listed as "856-596-4446."  (Compl., Ex. A.)  This phone number has a New Jersey area code and is the same as PCS' phone number, which is associated with PCS' New Jersey address.  (Id.)

9

contract term is generally binding if the contract is mutually agreed upon by the parties, is supported by consideration, and does not violate codified standards or offend public policy. Hoffman v. Supplements Togo Mgmt., 419 N.J. Super. 596, 606, 18 A.3d 210 (N.J. Super. Ct. App. Div. 2011) (citing W. Caldwell v. Caldwell, 26 N.J. 9, 24-26, 138 A.2d 402 (1958)), certif. granted, 209 N.J. 231, 36 A.3d 1063 (N.J. 2012).  The parties mutually assent to a contract term when there is a meeting of the minds.  Id. (citing Pop's Cones, Inc. v. Resorts Int'l Hotel, 307 N.J. Super. 461, 467-68, 704 A.2d 1321 (N.J. Super. Ct. App. Div. 1998)).  "This signifies that each party to the contract must have been fairly informed of the contract's terms before entering into the agreement."  Id.

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'"  Atalese v. U.S. Legal Serv. Group, L.P., 219 N.J. 430, 442, 99 A.3d 306 (N.J. 2014) (internal citation omitted), cert. denied, --- S. Ct. ---, 2015 WL 275587, at *1 (2015).  "Mutual assent requires that the parties have an understanding of the terms to which they have agreed."  Id.  "'An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights.'"  Id. (internal citation omitted).  Because arbitration involves a waiver of the right to pursue a case in a judicial

forum, "'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'"  Id. at 442-43 (internal citation omitted).

Where, as here, the contractual provision to be enforced is not embodied in the document signed by the parties, the Court must consider whether there was mutual assent to include as part of the agreement the additional terms contained in a separate document.  "In order for there to be a proper and enforceable incorporation by reference of a separate document . . . the party to be bound by the terms must have had 'knowledge of and assented to the incorporated terms.'"  Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 533, 983 A.2d 604 (N.J. Super. Ct. App. Div. 2009) (internal citation omitted), certif. denied, 203 N.J. 93, 999 A.2d 462 (N.J. 2010). In the internet era, when agreements are often maintained, delivered and signed in electronic form, a separate document may be incorporated through a hyperlink, but the traditional standard nonetheless applies: the party to be bound must have had reasonable notice of and manifested assent to the additional terms.  Liberty Syndicates at Lloyd's v. Walnut Advisory Corp., Civ. A. No. 09-1343, 2011 WL 5825777, at *4 (D.N.J. Nov. 16, 2011) (noting that relevant inquiry is whether "the specifics surrounding [the] agreement revealed either that the user knew

11

or should have known about the existence of the terms and conditions . . . [.]"); Hoffman, 419 N.J. Super. at 611, 18 A.3d 210.

Many courts have addressed whether a party may be bound by terms set forth in a hyperlink in an electronic agreement. Two types of contractual scenarios typically discussed in the digital realm are "clickwrap" agreements and "browsewrap" agreements. In a "clickwrap" agreement, all of the terms of an agreement are collected in a dialog box and a user must click on an icon that affirmatively demonstrates assent to be bound by the terms and conditions. Liberty Syndicates, 2011 WL 5825777, at *4 n.5. In a "browsewrap" agreement, by contrast, the terms of use are contained in a hyperlink, but the user can utilize a provider's services without ever knowing that such services are being provided subject to the terms and conditions. Id.; see also Feldman v. Google, Inc., 513 F. Supp. 2d 229, 236 n.1 (E.D. Pa. 2007).

In Fjeta v. Facebook, Inc., 841 F. Supp. 2d 829 (S.D.N.Y. 2012), the district court conducted an extensive analysis of cases involving "clickwrap" and "browsewrap" agreements. The issue in Fjeta was whether the plaintiff had agreed to a forum selection clause when he joined Facebook, as the clause was part of Facebook's "Terms of Service." A person who joins Facebook must click a "Sign Up" button, which is immediately above a

12

notice that states: "'By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service.'" Id. at 835. The phrase "Terms of Service" is a hyperlink to Facebook's terms. Id.

The district court noted that the case did not involve a "pure-form" browsewrap agreement, but also did not involve a "pure-form" clickwrap agreement. Id. at 837-38. "Facebook's Terms of Use are somewhat like a browsewrap agreement in that the terms are only visible via a hyperlink, but also somewhat like a clickwrap agreement in that the user must do something else -- click "Sign Up" -- to assent to the hyperlinked terms. Yet, unlike some clickwrap agreements, the user can click to assent whether or not the user has been presented with the terms." Id. at 838. The district court concluded that the plaintiff had notice of Facebook's "Terms of Use" because he "was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences." Id. at 840.

Another instructive case is Swift v. Zynga Game Network, Inc., 805 F. Supp. 2d 904 (N.D. Cal. 2011). There, the terms of the defendant's service were not visible on a webpage but were attached via hyperlink. Id. at 910. Directly below an "Accept" button was a statement that clicking on the button served as assent to the defendant's terms of service, along with a blue

13

hyperlink to the terms of service. Id. at 911. The district court found that the plaintiff was bound by the terms of service, rejecting the argument that the plaintiff lacked sufficient notice of the contractual terms because they were contained in a hyperlink. Id. at 912. In so finding, the district court noted the "recent caselaw holding that clickwrap presentations providing a user with access to the terms of service and requiring a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button, are sufficient." Id.

The case presently before this Court presents a unique scenario because it involves mixed media. The Managed Support Plan was, according to PCS, sent in an electronic form that purportedly contained a hyperlink, but instead of being accepted electronically by clicking an icon, it was printed and a hard copy was signed by a Holdbrook representative. The contract was nonetheless much like the "clickwrap" agreements in Fjeta and Swift, where the "Terms and Conditions" were contained in a hyperlink immediately next to a mechanism for accepting the agreement. In place of an "I Accept" icon to be clicked, a Holdbrook representative was required to sign the agreement on paper.

In Fjeta, Swift, and other "clickwrap" case law that the Court has reviewed, courts find that parties assent to terms

14

contained in a hyperlink when the consumer is provided "reasonable notice" that additional terms apply to the agreement.  In such cases, the icon to be clicked to indicate assent was accompanied by a statement that clicking the button constitutes acceptance of the hyperlinked terms.  See, e.g., Fteja, 841 F. Supp. 2d at 835 (immediately below "Sign Up" button was statement that "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service" where "Terms of Service" was hyperlink to additional terms and conditions); Major v. McCallister, 302 S.W.3d 227, 228, 230 (Mo. Ct. App. 2009) (where user had to click button to register for website, and notice next to button stated "By submitting you agree to the Terms of Use" with hyperlink to website terms, court held that user could have known of existence of terms of use); Hubbert v. Dell Corp., 359 Ill. App. 3d 976, 984, 835 N.E.2d 113 (Ill. App. Ct. 2005)(where forms completed online stated that "All sales are subject to Dell's Term[s] and Conditions of Sale," and terms and conditions were accessible by clicking on hyperlink, court concluded that statement placed reasonable person on notice that there were terms and conditions attached to purchase).  In each of these cases, the statement drew the user's attention to the hyperlink, and this opportunity to view the additional terms in the hyperlink was deemed

sufficient to provide reasonable notice that assent to the contract included assent to the additional terms.[5]

In this case, by contrast, the hyperlink is placed in the Managed Support Plan in isolation.  Unlike the above-cited cases, there is no statement that signing the agreement indicated acceptance of the "Terms and Conditions," nor is there an instruction to sign the contract only if Holdbrook agreed to the additional terms.  The Court finds that the existence of the hyperlink in the document, without any statement to draw attention to the link, is insufficient to demonstrate that Holdbrook had "reasonable notice" that the "Terms and Conditions" were part of the contract.

Further complicating matters is the fact that although the Managed Support Plan was sent in electronic form, it could not be accepted in electronic form.  Thus, unlike the "clickwrap" cases where an obvious hyperlink appears next to the icon for accepting the contract, here it may not have been apparent that there was a hyperlink to additional terms.  In this regard, the contract had to be printed to be accepted, and there was thus no need for a Holdbrook representative to review the document

---

[5] As noted in Fteja, "[w]hether or not the consumer bothers to look is irrelevant.  'Failure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract.'"  Fteja, 841 F. Supp. 2d at 839 (internal citation omitted).

electronically before accepting the agreement.  Moreover, when the agreement was printed, as PCS acknowledges, the paper version contained only coding for the hyperlink, and it is not clear from the printed agreement that there was a hyperlink to additional terms and conditions.

　　　　Accordingly, the Court cannot conclude at this time that Holdbrook had "reasonable notice" of the "Terms and Conditions" so as to have assented to the arbitration clause contained therein.  As noted above, if arbitrability is not apparent on the face of the complaint and documents attached thereto, then the Court should deny the motion to dismiss and provide the parties the opportunity to further develop the factual record. Discovery may reveal that a Holdbrook representative reviewed the Managed Support Plan electronically, understood that there was a hyperlink to the "Terms and Conditions," and had notice of the additional terms.  However, because the Managed Support Plan does not contain a statement drawing attention to the separate "Terms and Conditions," did not need to be reviewed electronically to be accepted, and the printed version did not obviously demonstrate the existence of additional "Terms and Conditions," the Court cannot conclude based solely on review of the document that Holdbrook had reasonable notice that the Managed Support Plan contained additional terms.  PCS' motion to dismiss will therefore be denied at this time, without prejudice

17

to its right to file a renewed motion after the parties take limited discovery on issues concerning arbitrability of this action.

### C.  PCS' Request for a Stay

PCS alternatively asks for a stay of this litigation pending arbitration before the AAA.  As noted above, five days after Holdbrook filed a complaint before this Court, PCS filed a demand for arbitration with the AAA for damages purportedly resulting from Holdbrook's failure to pay the balance of the amount due for services rendered under the Managed Support Plan.  (PCS' Br. 5.)  PCS argues that Holdbrook can assert in the arbitration any claims it has in this case.  (Id.)  Although Holdbrook contends that the AAA has not agreed to hear the controversy between the parties because of a dispute as to the validity of the mandatory arbitration provision (Holdbrook's Opp. Br. 9), PCS responds that the AAA arbitrator will decide the issue of arbitrability in the arbitration.  (PCS' Reply Br. 5-6.)

Under the Federal Arbitration Act (hereafter, "FAA"),

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay

18

> the trial of the action until such
> arbitration has been had in accordance with
> the terms of the agreement, providing the
> applicant for the stay is not in default in
> proceeding with such arbitration.

9 U.S.C. § 3.  For the reasons discussed above, the Court at this time is unable to determine that the parties entered into an agreement that included an arbitration provision. Accordingly, the Court will deny without prejudice PCS' motion to stay this action pending arbitration.

Moreover, while PCS argues that the arbitrator is already deciding the issue of arbitrability, this issue must be decided by the Court, not the arbitrator.  "'The question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'"  Puleo v. Chase Bank USA, 605 F.3d 172, 178 (3d Cir. 2010) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)).  A question of arbitrability arises when "there is a threshold dispute over 'whether the parties have a valid arbitration agreement at all[.]'"  Id. (quoting Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003)).  For "a litigant seeking to prove that the parties intended for the arbitrator to decide questions of arbitrability," the burden has been described as "'onerous.'"

19

Id. at 187 (quoting Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 221 (3d Cir. 2007)).

Here, there has been no showing that the parties agreed to submit the issue of arbitrability to the arbitrator.  The Court at this time has made a preliminary determination on the issue of arbitrability, finding that the record is insufficient to demonstrate that the parties have a valid arbitration agreement at all.  Therefore, the Court will not stay this litigation and compel arbitration so that the arbitrator may decide the issue of arbitrability.  PCS' alternative request for a stay will, accordingly, be denied.

**IV.  CONCLUSION**

For the reasons discussed above, PCS' motion to dismiss, or alternatively for a stay of litigation and to compel arbitration, will be denied, without prejudice to PCS' right to file a renewed motion once the parties take discovery on the issue of arbitrability.

An Order consistent with this Opinion will be entered.


                                        s/ Noel L. Hillman____
Date: July 21, 2015                     NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

20